**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Joseph Driscoll,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-08341-PCT-JJT<br><br>**ORDER** |

  At issue is the denial of *pro se* Plaintiff Brian Joseph Driscoll's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act (the "Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Amended Opening Brief (Doc. 39, Pl. Br.), Defendant SSA Commissioner's Opposition (Doc. 42, Def. Br.), and Plaintiff's Reply (Doc. 47, Reply). The Court has reviewed the briefs and the Administrative Record (Doc. 13, R.) and now affirms the Administrative Law Judge's ("ALJ") decision (R. at 11-39).

**I. BACKGROUND**

  Plaintiff filed an Application for Disability Insurance Benefits on October 6, 2014, alleging a period of disability beginning on January 23, 2014. (R. at 14.) Plaintiff's claim was denied initially on February 26, 2015, and upon reconsideration on May 1, 2015. (R. at 14.) Plaintiff testified at a video hearing on July 27, 2017. (R. at 14.) The ALJ denied

Plaintiff's Application on September 6, 2017. (R. at 11–39.) This decision became final on September 25, 2018 when the Appeals Council denied Plaintiff's request for review. (R. at 1–5.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical evidence, the ALJ evaluated Plaintiff's disability based on the following severe impairments: vertigo and obesity. (R. at 16.)

Ultimately, the ALJ concluded Plaintiff is not disabled. (R. at 32.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 22.) Based on the record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) with some limitations, including: never climbing ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; avoiding exposure to concentrated dust, odors, fumes, and pulmonary irritants; avoiding exposure to dangerous heights and hazardous machinery; avoiding more than occasional exposure to extreme temperatures; and performing jobs that involve only routine and repetitive tasks with no high production quotas, fast-paced work requirements, or operation of vehicles for a commercial purpose. (R. at 22–23.) Based on this RFC, the ALJ found that Plaintiff cannot perform any past relevant work but can perform jobs that exist in significant numbers in the national economy. (R. at 31–32.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is

more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises five issues for the Court's consideration: (1) the ALJ erred by rejecting Plaintiff's symptom testimony; (2) the ALJ erred in considering the medical opinion evidence; (3) the ALJ erred by giving only partial weight to the lay witness opinions; (4) the ALJ erred in calculating Plaintiff's RFC; and (5) the ALJ violated Plaintiff's constitutional right to due process. The Court finds the ALJ did not commit reversible error and therefore affirms her findings.

> **A. The ALJ did not err by rejecting Plaintiff's symptom testimony because she provided specific, clear, and convincing reasons that were supported by substantial evidence.**

Plaintiff testified that he is unable to work primarily due to pressure between his ears, dizziness, nausea, and not being able to think clearly. (R. at 55.) He testified that his symptoms affect his ability to pay his bills, drive, think, recall words, bowl, play horseshoes, play poker, care for his yard, and wash his car. (R. at 50–55.) The ALJ rejected Plaintiff's testimony for three reasons. First, the ALJ determined Plaintiff's alleged limitations were not supported by objective medical evidence. (R. at 24–25.) Next, the ALJ found that Plaintiff's daily activities were inconsistent with his alleged limitations. (R. at 26–27.) Finally, the ALJ found that Plaintiff's conservative course of treatment undermined his alleged limitations.[1] (R. at 28.) The Court finds that the ALJ's rationale is sufficient.

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ may consider whether the claimant's medical

---

[1] The Court need not address whether Plaintiff's treatment was conservative since the ALJ's other reasons for rejecting Plaintiff's testimony were specific, clear, and convincing and supported by substantial evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

record contains evidence to support his symptom testimony, but that cannot form the sole basis for discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In determining credibility, the ALJ may also properly consider the claimant's daily activities, course of treatment, and symptoms. *Id.*

### 1. The objective medical evidence does not support Plaintiff's alleged limitations.

The ALJ's first reason for rejecting Plaintiff's testimony—that the medical record does not support Plaintiff's alleged limitations—is specific, clear, and convincing and supported by substantial evidence. The ALJ first considered Plaintiff's diagnostic testing and found that although it showed some abnormalities, it did not support the extent of Plaintiff's alleged limitations. (R. at 24.) The ALJ observed that Plaintiff's CT scans, MRIs, vestibular autorotation tests, vestibular evoked myogenic potential tests, Holter monitoring, and electrocochleography were largely normal or unremarkable. (R. at 24.) According to the ALJ, these objective findings "fit the profile of a person who is capable of performing less than the full range of medium work." (R. at 24.)

The ALJ also considered records from Plaintiff's physical and neurological examinations and determined they "do not persuasively support [his] allegations of entirely disabling symptoms and limitations." (R. at 24.) For example, despite frequently reporting dizziness, Plaintiff often had clear vision with no nystagmus, full motor strength, normal sensory function, intact finger-to-nose coordination, and normal gait. (R. at 24–26.) Though Plaintiff reported falling multiple times at home due to his nausea and balance problems, his physicians reported no bruising. (R. at 26.) Finally, Plaintiff's Romberg's test and Fukuda test were negative, and he repeatedly tested negative for Meniere's disease. (R. at 24–25.)

In sum, the ALJ found that despite Plaintiff's recurring complaints of severe and continuous vertigo, the medical evidence was "largely unremarkable" and did "not support Plaintiff's allegations of entirely disabling symptoms." (R. at 26.) Plaintiff argues the ALJ misinterpreted and even mischaracterized the evidence to support her finding of non-

disability. (Pl. Br. at 9.) However, the Court finds that the ALJ's interpretation of the evidence was rational and therefore upholds her findings. *Burch*, 400 F.3d at 680–81.

### 2. Plaintiff's daily activities were inconsistent with his alleged limitations.

The ALJ also considered Plaintiff's daily activities and determined they were inconsistent with his alleged limitations, and the Court agrees. An ALJ may properly disregard a claimant's testimony if his daily activities are incompatible with the alleged severity of his symptoms. *See Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

Here, the ALJ found that Plaintiff's driving undermined the credibility of his alleged limitations. (R. at 27.) Plaintiff repeatedly complained of dizziness and spinning sensations. In 2014, Plaintiff informed his physician that he consistently feels like he has consumed five beers and that the spinning sensation he experienced has never gone away or changed. (R. at 896.) In a 2015 Disability Report, Plaintiff indicated he had vision issues. (R. at 264.) In a May 2016 statement to the SSA, Plaintiff claimed that since May 2013, he has constantly been dizzy, nauseated, had pressure between his ears, experienced balance issues, had ringing in his ears, and been disoriented and fatigued. (R. at 320.) At the hearing, Plaintiff testified that he is dizzy all the time and feels like he has consumed five beers or two glasses of wine and then stood up. (R. at 56.)

Nevertheless, the ALJ found that Plaintiff "has acknowledged significant driving activity since the reported onset of his alleged continuous vertigo symptoms." (R. at 27.) For example, Plaintiff testified that he worked at Anheuser-Bush for a few months after the alleged onset of his symptoms before quitting in August 2014, which required him to drive to work every day and to drive while at work two or three days per week. (R. at 59–65.) Plaintiff subsequently testified that he would have someone drive him when he could not. (R. at 66.) However, the ALJ did not find this clarification persuasive. (R. at 27.) Additionally, Plaintiff testified that he lives alone in Arizona for half of the year and with his daughter, sister, or brother in California or Oregon for the other half. (R. at 48.) He

testified that he drives from California to Arizona in the middle of the night, which takes him approximately five and a half hours. (R. at 52.) When he is in Arizona, he drives a golf cart because it only goes ten miles per hour, and he therefore would not be able to hurt anyone with it. (R. at 69.) He drives his golf cart approximately one hour to Starbucks in the early morning. (R. at 51.) He also drives to the grocery store. (R. at 51.) The ALJ found that Plaintiff's driving "is an activity that requires a substantial and sustained degree of attention and concentration." (R. at 27.) The Court agrees and finds that substantial evidence supports the ALJ's conclusion that Plaintiff's driving is inconsistent with his allegations of complete disability.

In addition to driving, the ALJ also considered Plaintiff's testimony that he does his own grocery shopping, does some cooking and cleaning, and used to take his dog for a walk twice per day. (R. at 55.) The ALJ determined those activities also indicated Plaintiff is more functional than alleged. (R. at 28.) However, the ALJ did not sufficiently develop the record as to how frequently Plaintiff engages in those activities or how long they take him. Therefore, the Court does not find that those activities are necessarily probative of Plaintiff's overall functional limitations. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, because substantial evidence supports the ALJ's overall finding that Plaintiff's daily activities, namely driving, are inconsistent with his alleged limitations, the Court finds the ALJ's rejection of Plaintiff's testimony was proper.

In sum, the ALJ's findings that Plaintiff's objective medical records and daily activities do not support his alleged limitations are supported by substantial evidence. Therefore, the ALJ did not err by rejecting Plaintiff's symptom testimony.

**B.     The ALJ properly evaluated the medical opinion evidence.**

The ALJ also considered medical opinion evidence from multiple sources, including state agency psychologists, state agency physicians, and treating physicians. (R. at 28–30.) Plaintiff's arguments lack clarity and citations to relevant legal standards. However, he seems to argue the ALJ: (1) improperly relied on state consultant reports, and (2) improperly excluded opinion evidence from Plaintiff's treating physicians, Drs. Tran,

Rogers, Trent, and Strasnick.[2] (Pl. Br. at 9–10, 14.) Defendant urges that Plaintiff does not actually contest the ALJ's rationale for rejecting the opinions of his treating physicians and therefore waived this issue. (Def. Br. at 15.) However, the Court must afford the briefs of *pro se* litigants "the benefit of any doubt" and therefore will consider whether the ALJ's evaluation of the relevant medical opinion evidence was supported by substantial evidence. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). The Court finds the ALJ did not err in considering the medical opinion evidence in this case.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In general, a treating physician's opinion should be given controlling weight. *Id.* The ALJ may only reject a treating or examining physician's contradicted medical opinion "for specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

> **1. The ALJ properly rejected the treating physicians' opinions because her reasons were specific and legitimate and supported by substantial evidence.**

The ALJ first considered medical assessments by Dr. Rogers. In November 2014, Dr. Rogers completed a Certification of Health Care Provider for Employee's Serious

---

[2] Contrary to Plaintiff's argument, the ALJ considered Dr. Strasnick's treatment records and letters. (R. at 28.) The Court was unable to find an opinion by Dr. Tran, and Plaintiff did not include a clear citation to the record.

- 8 -

Health Condition for Plaintiff's Family and Medical Leave Act Application. (R. at 1073–77.) He opined that Plaintiff was "unable to perform usual and customary job functions." (R. at 1075.) In May 2016, Dr. Rogers opined that Plaintiff suffers from debilitating dizziness, tinnitus, nausea, difficulty concentrating, and fatigue. (R. at 1550.) He also stated he fully supports Plaintiff's application for disability since "he will be unable to return to work for the long-term in his current state." (R. at 1550.) The ALJ gave little weight to Dr. Rogers's assessments because: (1) the issue of disability is reserved to the Commissioner; (2) Plaintiff underreported the extent of his driving to Dr. Rogers; and (3) Dr. Rogers's assessments were not supported by objective medical evidence. (R. at 28–29.)

The ALJ also considered a May 2016 opinion by Dr. Trent in which he opined that Plaintiff's complaints of chronic dizziness, nausea, memory lapses, tunnel vision, and fatigue seem real, not imagined. (R. at 1551.) Dr. Trent also noted there is no definitive diagnosis for Plaintiff's symptoms and that Plaintiff likely has a primary nervous system disease that has not improved since Dr. Trent began treating him. (R. at 1551.) The ALJ gave little weight to Dr. Trent's assessment because: (1) it lacked a definitive diagnosis; and (2) it was not supported by objective medical evidence. (R. at 28–29.)

The Court finds that the ALJ's rejection of the treating physicians' opinions was supported by substantial evidence. An ALJ may properly reject "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Here, the ALJ properly rejected the opinions of Dr. Rogers and Dr. Trent, which were inadequately supported by objective medical evidence and instead based on Plaintiff's discredited subjective statements. An ALJ need not give weight to a physician's opinion that is based on the claimant's properly discredited statements. *See Evenhus v. Astrue*, 815 F. Supp. 2d 1154, 1160 (D. Or. 2011) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). Specifically, the ALJ found that Dr. Rogers's treatment records contained statements by Plaintiff that he had reduced his driving. (R. at 29.) However,

Plaintiff testified that he continues to drive from California to Arizona, a trip that takes five and a half hours. The ALJ was not required to give weight to Dr. Rogers's opinion that was based in part on Plaintiff's inconsistent statements. *See Evenhus*, 815 F. Supp. 2d at 1160 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751–52 (9th Cir. 1989)) ("The ALJ may reject a treating physician's opinion in cases in which objective test results, reports from other physicians, testimony from the claimant, or other evidence conflicts with the opinion.").

In sum, the Court finds that substantial evidence supports the ALJ's rejection of Dr. Rogers's and Dr. Trent's opinions.

### 2. The ALJ did not err by giving weight to the state agency consultants' opinions.

Plaintiff also argues the state agency consultants' opinions are not credible because they were not based on a complete record. (Pl. Br. at 14–15.) However, the Court is not persuaded. "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *See Tommasetti*, 533 F.3d at 1041. When evaluating how much weight to afford a medical opinion, the ALJ should consider, among other things, the timing of the opinion. 20 C.F.R. § 404.1527(c). Here, the consultants' opinions are consistent with the evidence they considered. The ALJ's decision regarding the medical evidence is supported by substantial evidence, and the ALJ is therefore entitled to deference.

### C. The ALJ erred by discrediting the lay witness opinions because her reasons were insufficient, but the error was harmless.

Plaintiff argues the ALJ improperly rejected the lay witness opinions of: (1) his daughter, Ashley K. Driscoll-Barber; (2) his acquaintance, Kathleen McAlpine; and (3) his sister-in-law, Carole Driscoll. (Pl. Br. at 14.) The ALJ gave the opinions partial weight because they were only partially consistent with the medical evidence and inherently subjective due to the nature of the relationships. (R. at 29–30.) The Court finds the ALJ's reasons for discounting the opinions were insufficient, but that the error was harmless.

When evaluating whether a claimant is disabled, the ALJ must consider lay witness evidence. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). The

ALJ may disregard the lay witness evidence by providing germane reasons. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ must consider the lay witness evidence even if it is unsupported by the medical evidence. *See, e.g., Smolen*, 80 F.3d at 1289. Additionally, the lay witness need not be medically trained to provide testimony about the claimant's ability to work. *See* 20 C.F.R. § 404.1513(d); *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). Here, although the ALJ found the lay witness opinions were unsupported by the medical evidence and inherently subjective, those were insufficient bases to discredit the opinions.

Nevertheless, the Court finds that the ALJ's error in discounting these opinions was harmless. The Court need not remand or reverse an ALJ's decision if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038. When the ALJ errantly rejects a lay witness opinion but properly discounts similar testimony by the claimant, the reviewing court can find the error harmless if "it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Molina v. Astrue*, 674 F.3d 1104, 1116 (9th Cir. 2012).

Here, the lay witness opinions describe similar functional limitations that Plaintiff testified to at the hearing. For example, Ms. Driscoll stated Plaintiff has low energy and is often dizzy and disoriented, so much so that he falls and cannot drive. (R. at 298.) Ms. Driscoll-Barber stated Plaintiff has low energy, struggles with balance, and is often nauseas. (R. at 299.) She also stated Plaintiff needs help paying his bills and driving and falls regularly. (R. at 299.) Finally, Ms. McAlpine stated Plaintiff has fallen on many occasions and is too ill to drive or play games. (R. at 310.) The limitations that Plaintiff's family and friends described are similar to those he testified to during the hearing. Because the Court finds that the ALJ gave clear and convincing reasons for rejecting Plaintiff's testimony, those reasons are equally sufficient to reject the lay witness opinions. *See*

*Valentine*, 574 F.3d at 694. Therefore, the ALJ's error in giving only partial weight to the lay witness opinions was harmless.

### D. The ALJ did not err in calculating Plaintiff's RFC.

Plaintiff argues the ALJ improperly calculated his RFC. (Pl. Br. at 14.) The Court disagrees. Where the ALJ has applied the proper legal standard and substantial evidence supports his RFC calculation, the Court will affirm it. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, the Court finds that the ALJ properly evaluated Plaintiff's symptom testimony and committed harmless error in giving partial weight to Plaintiff's lay witness opinions. Therefore, the Court will not disturb the ALJ's RFC calculation.

### E. The SSA did not violate Plaintiff's due process rights.

Plaintiff's final argument is that the SSA violated his constitutional right to due process. Plaintiff offers several bases for the alleged violation, including: (1) the ALJ failed to adequately develop the record; (2) the Appeals Council ignored his request to proceed *pro se* and thereby prevented him from submitting additional evidence; (3) the Appeals Council mailed its adverse decision to an incorrect address; and (4) the SSA failed to timely provide Plaintiff with his claim file.[3] (Doc. 1 at 6–7, Pl. Br. at 21–22, Reply at 5–10.) The Court rejects each of Plaintiff's claims.

In general, the Act grants a district court jurisdiction to review only "final decisions" of the SSA. 42 U.S.C. § 405(g). However, an exception exists for colorable constitutional due process claims that allege a violation that implicates the right to be meaningfully heard. *See Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008). A constitutional due process claim is colorable if it is supported by facts sufficient to state a due process violation and not immaterial or implausible. *Hoye v. Sullivan*, 985 F.2d 990, 991–92 (9th Cir. 1992).

Plaintiff does not assert a colorable constitutional claim for a violation of his due process rights because the alleged deprivations are immaterial. His factual allegations do not sustain a claim for the violation of due process because he received a hearing before

---

[3] The Court has reviewed Plaintiff's Complaint (Doc. 1), his Opening Brief (Doc. 39) and his Reply (Doc. 47) in order to analyze his due process claims.

- 12 -

the ALJ and therefore had a meaningful opportunity to be heard on his claims. Moreover, Plaintiff was represented at the hearing, and his lawyer did not raise any evidentiary issues. The Court finds the ALJ adequately developed the record and evaluated Plaintiff's claim pursuant to the Act's regulatory framework. The ALJ's findings are supported by substantial evidence and therefore the Court will not set aside her determination of nondisability. *See Orn*, 495 F.3d at 630.

Nor does the Court find that the Appeals Council violated Plaintiff's due process rights. On November 6, 2017, Plaintiff filed a request for review of the ALJ's decision. (R. at 181.) On November 8, 2017, the Appeals Council notified Plaintiff, via his legal representative, that it received his request for review and would consider additional evidence submitted within 25 days. (R. at 6–10.) On September 25, 2018, the Appeals Council denied Plaintiff's request for review pursuant to its rules and after considering: (1) Plaintiff's November 6, 2017 request for review of the ALJ's decision; (2) a November 21, 2017 letter brief submitted by Plaintiff's former legal counsel; and (3) a November 30, 2017 letter submitted by Plaintiff in which he requested to proceed *pro se*.[4] (R. at 391–97.) The Appeals Council therefore reviewed all of the evidence it received within the timeframe set forth in its November 8, 2017 letter. Plaintiff contends that the Appeals Council violated his due process rights by corresponding with his former legal counsel before he requested to proceed *pro se*. The Court, however, concludes this reflects a miscommunication between Plaintiff and his former lawyer, not a transgression by the Appeals Council.

Finally, with regard to Plaintiff's request to have additional evidence submitted at this juncture, including correspondence between Plaintiff and the SSA, the Court has

---

[4] Plaintiff also requested that the Appeals Council mail any correspondence to his seasonal Arizona address but stated his California address was current. (R. at 396.) He argues that the Appeals Council violated his due process rights by continuing to mail correspondence to his California address. The Court disagrees. Moreover, the Appeals Council mailed its September 25, 2018 denial of Plaintiff's request for review to his Arizona address as requested. (R. at 1–5.) Therefore, the Court does not find that Plaintiff has alleged facts sufficient to state a due process violation.

- 13 -

already addressed this and determined it is immaterial to whether the ALJ's decision was supported by substantial evidence. (Doc. 53.)

**IT IS THEREFORE ORDERED** affirming the September 6, 2017 decision of the Administrative Law Judge. (R. at 11–39.)

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 16th day of April, 2020.

Honorable John J. Tuchi
United States District Judge